IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY MONTGOMERY, | Case No. C-12-2453 SC |
| Plaintiff, | ORDER RE: MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION |
| v. | |
| PNC BANK, N.A., and DOES 1 through 100, inclusive, | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiff Larry Montgomery ("Montgomery") brings this action against Defendant PNC Bank, N.A. ("PNC") for improper credit reporting.  Specifically, Montgomery alleges that PNC improperly reported his account as delinquent even though the bank was aware that Montgomery's debts had been discharged through bankruptcy. ECF No. 1 ("Not. of Removal") Ex. A ("Compl.") ¶¶ 15-17.  On August 6, 2012, the Court granted PNC's motion to dismiss the action on the ground that Montgomery's claims were contradicted by a credit report attached to his Complaint.  ECF No. 18 ("Aug. 6 Order").[1]

[1] Montgomery v. PNC Bank, Nat. Ass'n, No. C-12-2453 SC, 2012 WL 3236299, 2012 U.S. Dist. LEXIS 109932 (N.D. Cal. Aug. 6, 2012).

Montgomery now moves the Court for leave to file a motion for reconsideration. ECF No. 20 ("Mot. for Reconsideration"). In support of his motion, Montgomery has filed a clearer copy of the credit report which was central to the Court's August 6 Order. The clearer copy reveals text which previously was not visible. Had the Court been able to read this text in the first instance, it would have reached a different decision on PNC's motion to dismiss. Thus, the Court's prior order was in error. Rather than grant Plaintiff leave to file a motion for reconsideration, the Court VACATES its August 6 Order <u>sua</u> <u>sponte</u>. The Court also revisits PNC's motion to dismiss, which is GRANTED in part and DENIED in part.

## II.   <u>BACKGROUND</u>

Montgomery filed a voluntary Chapter 7 bankruptcy petition on March 8, 2010. Compl. ¶ 12. As a result of the bankruptcy proceedings that followed, Montgomery was granted a discharge of all dischargeable debts pursuant to 11 U.S.C. § 727 on June 2, 2010. <u>Id.</u> ¶¶ 13, 15. Montgomery alleges that this discharge included his $993,750 debt to PNC. <u>Id.</u> Pleadings filed by Montgomery in another action indicate that this $993,750 was a mortgage debt. <u>See</u> ECF No. 6-1 ("RJN") Ex. A. On April 7, 2011, Montgomery sent a letter to the credit reporting agency Experian, contesting the inclusion of certain information in his credit profile. <u>Id.</u> ¶ 16, Ex. A ("Experian Ltr."). Referring to Montgomery's PNC account ending 8530, the letter stated: "This account was included in my bankruptcy. This account should not be reporting a high balance, lates, charge-offs, and should be

reflecting a 0 balance.  Remove these delinquent items now."
Experian Ltr.

Montgomery alleges that, despite his letter to Experian, PNC continued to improperly report his credit and also failed to report to Experian that his account information was disputed.  Compl. ¶ 17.  Montgomery specifically points to a May 28, 2011 Experian credit report, which was attached to the Complaint as Exhibit C and was later re-filed with the Court as an exhibit to a declaration in support of Montgomery's motion for reconsideration.  Compl. ¶ 17, Ex. C; ECF No. 20 ("Decl. ISO Mot. for Reconsideration") Ex. A. With respect to the PNC account identified in the Complaint, the credit report describes the "Recent balance" and "Monthly Payment" as "Not reported."  It further states: "Account transferred to another lender," and "Status: Transferred, closed."  Id.  The credit report does not report a "high balance" or "charge-offs" for the account.  Nor does it indicate that the account is currently delinquent.

At the bottom of the credit report there is a multi-colored table showing the "payment history" for the account from October 2007 through October 2010.  In the blurry, black-and-white copy of the report initially filed with the Court, this table is indecipherable and appears to be nothing more than a bar code.  The table is more legible in the later-filed color copy of the report. The table appears to reflect that Montgomery was at least 180 days overdue on his PNC loan from June 2009 through September 2010.

On April 12, 2012, Montgomery filed the instant action in the Superior Court of the State of California in and for the County of Alameda.  The case was subsequently removed to federal court.

**United States District Court**
For the Northern District of California

Montgomery asserts nine causes of action: (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b); (2) violation of the California Song-Beverly Credit Card Act, Cal. Civ. Code § 1747, et seq.; (3) violation of the Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.25(a); (4) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (5) libel; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) deceit; and (9) constructive fraud.  All of these claims are predicated on the allegation that PNC falsely reported that Montgomery was delinquent on his loan payments.  See Compl. ¶¶ 30-31, 40, 48, 63, 68, 77, 81, 86, 91.

On June 4, 2012, PNC filed a motion to dismiss the Complaint.[2] The Court granted the motion on August 6, 2012, reasoning that the credit report attached to Montgomery's Complaint directly contradicted his allegations.  Aug. 6 Order at 4.  Specifically, the Court found that the report did not reflect any delinquencies on Montgomery's PNC account.  Id.  On August 13, 2012, Montgomery filed the instant motion, requesting leave to file a motion for reconsideration in connection with the Court's August 6 Order.

**III.  DISCUSSION**

    **A.  Motion for Leave to File a Motion for Reconsideration**

The local rules allow a party to file a motion for reconsideration where there has been "[a] manifest failure by the Court to consider material facts or dispositive legal arguments

---

[2] The motion was fully briefed.  ECF Nos. 11 ("Opp'n"), 16 ("Reply").

which were presented to the Court . . . ."  Civ. L.R. 7-9(b)(3).

"Unless otherwise ordered by the assigned Judge, no response need

be filed and no hearing will be held concerning a motion for leave

to file a motion to reconsider."  Civ. L.R. 7-9(d).

In deciding PNC's motion to dismiss, the Court failed to

consider material facts contained in the credit report attached to

the Complaint because the copy filed with the Court was illegible.

Specifically, the Court failed to consider the "Payment history"

table in the credit report.  This table is material because,

without it, the credit report is inconsistent with Montgomery's

allegation that PNC falsely reported that he was delinquent on his

loan payments.  The Payment history table indicates that Montgomery

was delinquent on his loan payments after he filed for bankruptcy

in March 2010.[3]

Thus, the Court's August 6 Order was in error since it turned

on an inaccurate copy of the credit report.  As this error is clear

from Montgomery's motion for leave to file a motion for

reconsideration, further briefing is unnecessary.  Accordingly, the

Court VACATES its August 6 Order and reconsiders the other

arguments advanced in PNC's motion to dismiss.

**B.**   **Motion to Dismiss**

1.   Accuracy of Montgomery's Credit Report

PNC's lead argument in favor of dismissal is that Montgomery

cannot state a claim for false credit reporting because his credit

report is accurate.  MTD at 3.  This argument is unavailing.

Montgomery's credit report reflects that he was delinquent on the

---

[3] It is not clear that Montgomery is responsible for the poor
quality of the credit report.  PNC filed a copy of the document
with the Court when it removed this action from state court.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   payments for his PNC loan from June 2009 through October 2010.

2   Compl. Ex. C.  Montgomery alleges that no delinquencies should have

3   been reported on the account after June 2010, when his PNC debt was

4   discharged through bankruptcy.  Compl. ¶¶ 15-16.  PNC has offered

5   no authority which would suggest that this position is incorrect as

6   a matter of law.  Further, on a Rule 12(b)(6) motion to dismiss,

7   the Court must accept all well-pleaded allegations as true and

8   construe them in the light most favorable to the plaintiff.

9   Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  Thus, at this stage

10  of the litigation, the Court cannot conclude that Montgomery's

11  credit was accurately reported.

12              2.   Transfer of Montgomery's Loan

13       PNC also argues that it could not have improperly reported

14  Montgomery's credit in 2011 because it transferred Montgomery's

15  account to another loan servicer in December 2010.  See MTD at 1,

16  4-6.  PNC points to the credit report attached to the Complaint,

17  which states that Montgomery's PNC account had been "transferred to

18  another lender."  Id.  PNC also points to a pleading filed by

19  Montgomery in another matter which alleges that "Litton" became the

20  servicer of one of Montgomery's PNC loans in December 2010.  Id.

21  (citing RJN Ex. A).  Montgomery responds that it is irrelevant that

22  PNC is not currently servicing his loan since the bank continues to

23  report inaccuracies on the account.  Opp'n at 11.  This dispute

24  boils down to a question of who reported the delinquencies on

25  Montgomery's PNC account in 2011, PNC or some other entity.[4]  Such

26

27  _____
    [4] PNC does not dispute that it could be held liable if it was

28  responsible for reporting false information after Montgomery's
    account was transferred.  Rather, its position appears to be that,
    after the account was transferred, it did not convey any

1   factual disputes are inappropriate for resolution on a Rule

2   12(b)(6) motion to dismiss.  Accordingly, the Court declines to

3   dismiss Montgomery's action or any of his individual claims on the

4   ground that Montgomery's PNC account was transferred.

5              3.   <u>Violation of the FCRA</u>

6        PNC argues that Montgomery has failed to state an actionable

7   violation of the FCRA because "[Montgomery] has no private right of

8   action under the FCRA for the alleged inaccurate reporting of

9   information."  MTD at 4.  It is true that there is no private right

10  of action under 15 U.S.C. § 1681s-2(a), which relates to the "duty

11  of furnishers of information to provide accurate information."  15

12  U.S.C. § 1681s-2(d); <u>see also</u> <u>Nelson v. Equifax Info. Servs., LLC</u>,

13  522 F. Supp. 2d 1222, 1230 (C.D. Cal. 2007).  However, Montgomery's

14  FCRA claim is predicated on § 1681s-2(b), not § 1681s-2(a).  Compl.

15  ¶¶ 28-37.  The FCRA does not preclude private lawsuits brought

16  under § 1681s-2(b).  15 U.S.C. § 1681s-2(d); <u>see also</u> <u>Gorman v.</u>

17  <u>Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1155 (9th Cir. 2009).

18       Section 1681s-2(b) requires that, after receiving a notice of

19  dispute concerning the accuracy of any information provided to a

20  consumer reporting agency, a furnisher of information shall, among

21  other things, "conduct an investigation," "review the relevant

22  information," and "report the results."  15 U.S.C. § 1681s-2(b)(1).

23  PNC argues that Montgomery's allegation that an investigation

24  occurred indicates that there was no violation of the statute.  MTD

25  at 4.  PNC reasons that the statute merely requires an

26  investigation, and does not mandate that the investigation be

27  "reasonable."  This exact argument has been addressed and rejected

28  information pertaining to Montgomery's account to the credit
    reporting agencies.

**United States District Court**
For the Northern District of California

1   by the Ninth Circuit.  <u>Gorman</u>, 584 F.3d at 1165 ("[W]e hold that

2   any investigation under § 1681s-2(b)(1)(A) must be reasonable.").

3   Accordingly, PNC's motion to dismiss is denied with respect to

4   Montgomery's claim for violation of the FCRA.

5            4.   <u>Violation of the Song-Beverly Credit Card Act</u>

6        Montgomery's claim for violation of the Song-Beverly Credit

7   Card Act does not identify which provision of the Act PNC allegedly

8   violated.  However, it appears that Montgomery intends to allege a

9   violation of California Civil Code section 1747.70, which provides

10  that "[n]o card issuer shall knowingly give any untrue credit

11  information to any other person concerning a cardholder."  <u>See</u>

12  Compl. ¶ 39 ("Creditor published . . . credit reports which

13  contained statements about Plaintiff that were untrue . . . .").

14  As PNC points out, Montgomery cannot possibly state a claim under

15  this provision -- or any other provision of the Song-Beverly Credit

16  Card Act for that matter -- because it applies to credit card

17  debts, not mortgage debts like the one that is the subject of this

18  action.[5]  Montgomery does not offer any response to this argument.

19  Accordingly, Montgomery's claim for violation of the Song-Beverly

20  Credit Card Act is DISMISSED WITH PREJUDICE.

21            5.   <u>FCRA Preemption</u>

22        PNC argues that all of Montgomery's state law causes of

23  action, with the exception of his claim for violation of California

24  Civil Code § 1785.25a(a), are preempted by the FCRA.  MTD at 5.

25

26  _____

    [5] Even if Montgomery means to refer to the apparent credit card

27  debt referenced in the exhibits to his complaint, he still cannot
    plead a plausible violation of the Song-Beverly Credit Card Act.
    The credit report attached to the Complaint shows that this debt

28  was "Discharged through Bankruptcy Chapter 7."  Compl. Ex. C.  The
    report also does not reflect any delinquencies on the account.

Even though this argument implicates seven of Montgomery's claims, PNC summarily outlines its position in two short paragraphs and does not mention the issue in its reply brief.  Considering that PNC, as the moving party, bears the burden of persuasion, its briefing leaves much to be desired.  Nevertheless, PNC's legal position has some merit.

   With respect to preemption, the FCRA provides:

   (a) Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

   (b) General exceptions

   No requirement or prohibition may be imposed under the laws of any State--

   (1) with respect to any subject matter regulated under--
   . . .

   (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply--
   . . .

   (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996) . . . .

15 U.S.C. § 1681t.  In sum, the FCRA does not preempt state law collection, distribution, and reporting requirements, except those relating to the furnishing of accurate information to credit reporting agencies.  The FCRA also does not preempt California Civil Code section 1785.25(a).  With this framework in mind, the Court turns to Montgomery's fourth through ninth causes of action.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Montgomery's fourth cause of action for violation of the

2  California UCL is not preempted because it is predicated on PNC's

3  alleged violation of California Civil Code section 1785.25(a).

4  <u>See</u> Compl. ¶ 62.  As discussed above, the FCRA expressly exempts

5  section 1785.25(a) from preemption.  Thus, Montgomery' UCL claim

6  "does impose any additional substantive duties on [PNC]" beyond

7  those set forth in the FCRA and "is merely an additional

8  procedural vehicle for enforcing section 1725.25(a)."  <u>El-Aheidab</u>

9  <u>v. Citibank</u>, N.A., C-11-5359 EMC, 2012 WL 506473, at *6 (N.D. Cal.

10 Feb. 15, 2012); <u>see also</u> <u>Bottoni v. Sallie Mae, Inc.</u>, C 10-03602

11 LB, 2011 WL 635272, at *15 (N.D. Cal. Feb. 11, 2011).

12    Accordingly, Montgomery's claim for violation of the UCL

13 remains undisturbed.

14    The Court reaches a different conclusion with respect to the

15 preemption of Montgomery's remaining state law claims for libel,

16 intentional infliction of emotional distress, negligent infliction

17 of emotional distress, deceit, and constructive fraud.  There is a

18 split of authority in this area that arises from the tension

19 between two provisions of the FCRA.  When it was first enacted in

20 1968, the FCRA contained only one section dealing with the

21 preemption of state law claims.  This section, 15 U.S.C. §

22 1681h(e), currently provides:

24    Except as provided in section 1681n and 1681o of this
      title, no consumer may bring any action or proceeding in
      the  nature  of  defamation,  invasion  of  privacy,  or
25    negligence  with  respect  to  the  reporting  of  information
      against   any   consumer   reporting   agency,   any   user   of
26    information, or any person who furnishes information to a
      consumer reporting agency, based on information disclosed
27    pursuant to section 1681g, 1681h, or 1681m of this title,
      or based on information disclosed by a user of a consumer
28    report  to  or  for  a  consumer  against  whom  the  user  has
      taken adverse action based in whole or part on the report

United States District Court
For the Northern District of California

1  except as to false information furnished with malice or willful intent to injure such consumer.

2  In sum, under § 1681h(e), state law claims for defamation and

3  certain other torts are preempted only to the extent that such

4  claims are based on the disclosure of certain information and are

5  not based on "malice or willful intent to injure such consumer."

6  Congress later amended the FCRA to add a broader preemption

7  provision, currently codified at 15 U.S.C. § 1681t(b)(1)(F).  As

8  discussed above, this provision preempts all state law

9  requirements relating to the furnishing of accurate information to

10  credit reporting agencies.  Congress did not repeal or alter §

11  1682h(e) when it enacted § 1681t(b)(1)(F).

12      Courts have taken three approaches to address this tension:

13  the "total preemption" approach, the "temporal" approach, and the

14  "statutory" approach.  As one court aptly summarized:

15      Under the "total preemption" approach, [1681]t(b)(1)(F)
        does indeed preempt all state law claims against
16      furnishers of credit information arising from conduct
        regulated by 1681s-2, thus effectively repealing the
17      earlier preemption provision, 1681h(e).  Under the
        "temporal" approach, preemption depends on whether the
18      cause of action arises before or after a credit
        information furnisher has notice of a consumer dispute.
19      Finally, under the "statutory" approach, [1681]t(b)(1)(F)
        preempts only state law claims against credit information
20      furnishers brought under state statutes, just as 1681h(e)
        preempts only state tort claims.
21

22  Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 424-25 (E.D. Pa.

23  2006) (footnotes omitted).  The Ninth Circuit has yet to choose

24  among these different approaches.  See Gorman, 584 F.3d at 1167

25  ("In the end, we need not decide this issue.").  However, the

26  majority of district courts in this circuit appear to have adopted

27  the total preemption approach.  See, e.g., El-Aheidab, 2012 WL

28  506473, at *6-8 (applying the total preemption approach and

**United States District Court**
For the Northern District of California

1    collecting cases), <u>Miller v. Bank of Am., Nat. Ass'n</u>, 3:11-CV-

2    02588-MMA, 2012 WL 871321 (S.D. Cal. Mar. 14, 2012) (applying the

3    total preemption approach); <u>but</u> <u>see</u> <u>Gorman v. Wolpoff & Abramson,</u>

4    <u>LLP</u>, 370 F. Supp. 2d 1005, 1009 (N.D. Cal. 2005) (adopting the

5    statutory approach).  Circuit courts that have addressed the issue

6    have also adopted the total preemption approach.  <u>See</u> <u>Macpherson</u>

7    <u>v. JPMorgan Chase Bank, N.A.</u>, 665 F.3d 45, 47-48 (2d Cir. 2011);

8    <u>Purcell v. Bank of America</u>, 659 F.3d 622, 624-25 (7th Cir. 2011).

9         In light of the weight of authority favoring the total

10   preemption approach, the Court finds that Montgomery's claims for

11   libel, intentional infliction of emotional distress, negligent

12   infliction of emotional distress, deceit, and constructive fraud

13   are preempted by the FCRA.  These claims arise from conduct

14   regulated by § 1681s-2 and, thus, are preempted by

15   § 1681t(b)(1)(F).[6]  Accordingly, they are DISMISSED WITH PREJUDICE.

16

17   **IV.   <u>CONCLUSION</u>**

18        For the foregoing reasons, the Court VACATES its August 6,

19   2012 Order and directs the clerk of the court to reopen this case.

20   The Court also GRANTS in part and DENIES in part Defendant PNC Bank

21   N.A.'s motion to dismiss.  The Court DISMISSES WITH PREJUDICE

22

---

23   [6] Even if they were not preempted, many of these claims would still
24   fail.  Montgomery cannot state a claim for intentional infliction
     of emotional distress based on purely economic activity.  <u>See</u>
25   <u>Potter v. Firestone & Rubber Co.</u>, 6 Cal. 4th 965, 985 (Cal. 1993).
     Nor can he state a claim for fraud or deceit since he has not
26   alleged that PNC induced any detrimental reliance by Montgomery.
     The fraud and deceit claims also fail to the extent that they are
27   predicated on an "attempt[] to collect" a non-existent debt against
     Montgomery, <u>see</u> Compl. ¶¶ 86, 90, since Montgomery has not alleged
28   that PNC engaged in any debt collection activities after he filed
     for bankruptcy.  Montgomery does not attempt to save either of
     these claims in his opposition papers.

United States District Court
For the Northern District of California

1    Plaintiff Larry Montgomery's claims for violation of the California
2    Song-Beverly Credit Card Act, libel, intentional infliction of
3    emotional distress, negligent infliction of emotional distress,
4    deceit, and constructive fraud.  Montgomery's remaining claims for
5    violation of the FCRA, violation of California Civil Code section
6    1785.25(a), and violation of the California UCL remain undisturbed.

7        The Court hereby sets a case management conference for
8    September 21, 2012 at 10:00 a.m. in Courtroom 1, 450 Golden Gate
9    Avenue, San Francisco, California.  The parties are to file a joint
10   case management statement no fewer than seven days prior.

11

12       IT IS SO ORDERED.

13

14   Dated: August 24, 2012

     UNITED STATES DISTRICT JUDGE