IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY MONTGOMERY, | ) Case No. C-12-2453 SC |
| Plaintiff, | ) ORDER RE: MOTION FOR LEAVE ) TO FILE MOTION FOR |
| v. | ) RECONSIDERATION |
| PNC BANK, N.A., and DOES 1 through 100, inclusive, | ) |
| Defendants. | ) |

## I. INTRODUCTION

Plaintiff Larry Montgomery ("Montgomery") brings this action against Defendant PNC Bank, N.A. ("PNC") for improper credit reporting. Specifically, Montgomery alleges that PNC improperly reported his account as delinquent even though the bank was aware that Montgomery's debts had been discharged through bankruptcy. ECF No. 1 ("Not. of Removal") Ex. A ("Compl.") ¶¶ 15-17. On August 6, 2012, the Court granted PNC's motion to dismiss the action on the ground that Montgomery's claims were contradicted by a credit report attached to his Complaint. ECF No. 18 ("Aug. 6 Order").[1]

---

[1] Montgomery v. PNC Bank, Nat. Ass'n, No. C-12-2453 SC, 2012 WL 3236299, 2012 U.S. Dist. LEXIS 109932 (N.D. Cal. Aug. 6, 2012).

Montgomery now moves the Court for leave to file a motion for reconsideration.  ECF No. 20 ("Mot. for Reconsideration").  In support of his motion, Montgomery has filed a clearer copy of the credit report which was central to the Court's August 6 Order.  The clearer copy reveals text which previously was not visible.  Had the Court been able to read this text in the first instance, it would have reached a different decision on PNC's motion to dismiss.  Thus, the Court's prior order was in error.  Rather than grant Plaintiff leave to file a motion for reconsideration, the Court VACATES its August 6 Order <u>sua</u> <u>sponte</u>.  The Court also revisits PNC's motion to dismiss, which is GRANTED in part and DENIED in part.

**II.  BACKGROUND**

Montgomery filed a voluntary Chapter 7 bankruptcy petition on March 8, 2010.  Compl. ¶ 12.  As a result of the bankruptcy proceedings that followed, Montgomery was granted a discharge of all dischargeable debts pursuant to 11 U.S.C. § 727 on June 2, 2010.  <u>Id.</u> ¶¶ 13, 15.  Montgomery alleges that this discharge included his $993,750 debt to PNC.  <u>Id.</u>  Pleadings filed by Montgomery in another action indicate that this $993,750 was a mortgage debt.  <u>See</u> ECF No. 6-1 ("RJN") Ex. A.  On April 7, 2011, Montgomery sent a letter to the credit reporting agency Experian, contesting the inclusion of certain information in his credit profile.  <u>Id.</u> ¶ 16, Ex. A ("Experian Ltr.").  Referring to Montgomery's PNC account ending 8530, the letter stated: "This account was included in my bankruptcy.  This account should not be reporting a high balance, lates, charge-offs, and should be

reflecting a 0 balance. Remove these delinquent items now." Experian Ltr.

 Montgomery alleges that, despite his letter to Experian, PNC continued to improperly report his credit and also failed to report to Experian that his account information was disputed. Compl. ¶ 17. Montgomery specifically points to a May 28, 2011 Experian credit report, which was attached to the Complaint as Exhibit C and was later re-filed with the Court as an exhibit to a declaration in support of Montgomery's motion for reconsideration. Compl. ¶ 17, Ex. C; ECF No. 20 ("Decl. ISO Mot. for Reconsideration") Ex. A. With respect to the PNC account identified in the Complaint, the credit report describes the "Recent balance" and "Monthly Payment" as "Not reported." It further states: "Account transferred to another lender," and "Status: Transferred, closed." Id. The credit report does not report a "high balance" or "charge-offs" for the account. Nor does it indicate that the account is currently delinquent.

 At the bottom of the credit report there is a multi-colored table showing the "payment history" for the account from October 2007 through October 2010. In the blurry, black-and-white copy of the report initially filed with the Court, this table is indecipherable and appears to be nothing more than a bar code. The table is more legible in the later-filed color copy of the report. The table appears to reflect that Montgomery was at least 180 days overdue on his PNC loan from June 2009 through September 2010.

 On April 12, 2012, Montgomery filed the instant action in the Superior Court of the State of California in and for the County of Alameda. The case was subsequently removed to federal court.

3

1  Montgomery asserts nine causes of action: (1) violation of the Fair
2  Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b); (2)
3  violation of the California Song-Beverly Credit Card Act, Cal. Civ.
4  Code § 1747, et seq.; (3) violation of the Consumer Credit
5  Reporting Agencies Act, Cal. Civ. Code § 1785.25(a); (4) violation
6  of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof.
7  Code § 17200, et seq.; (5) libel; (6) intentional infliction of
8  emotional distress; (7) negligent infliction of emotional distress;
9  (8) deceit; and (9) constructive fraud.  All of these claims are
10 predicated on the allegation that PNC falsely reported that
11 Montgomery was delinquent on his loan payments.  See Compl. ¶¶ 30-
12 31, 40, 48, 63, 68, 77, 81, 86, 91.
13     On June 4, 2012, PNC filed a motion to dismiss the Complaint.[2]
14 The Court granted the motion on August 6, 2012, reasoning that the
15 credit report attached to Montgomery's Complaint directly
16 contradicted his allegations.  Aug. 6 Order at 4.  Specifically,
17 the Court found that the report did not reflect any delinquencies
18 on Montgomery's PNC account.  Id.  On August 13, 2012, Montgomery
19 filed the instant motion, requesting leave to file a motion for
20 reconsideration in connection with the Court's August 6 Order.

22 **III. DISCUSSION**
23     **A.   Motion for Leave to File a Motion for Reconsideration**
24     The local rules allow a party to file a motion for
25 reconsideration where there has been "[a] manifest failure by the
26 Court to consider material facts or dispositive legal arguments

---

[2] The motion was fully briefed.  ECF Nos. 11 ("Opp'n"), 16 ("Reply").

4

1  which were presented to the Court . . . ." Civ. L.R. 7-9(b)(3).
2  "Unless otherwise ordered by the assigned Judge, no response need
3  be filed and no hearing will be held concerning a motion for leave
4  to file a motion to reconsider."  Civ. L.R. 7-9(d).
5      In deciding PNC's motion to dismiss, the Court failed to
6  consider material facts contained in the credit report attached to
7  the Complaint because the copy filed with the Court was illegible.
8  Specifically, the Court failed to consider the "Payment history"
9  table in the credit report.  This table is material because,
10 without it, the credit report is inconsistent with Montgomery's
11 allegation that PNC falsely reported that he was delinquent on his
12 loan payments.  The Payment history table indicates that Montgomery
13 was delinquent on his loan payments after he filed for bankruptcy
14 in March 2010.[3]
15      Thus, the Court's August 6 Order was in error since it turned
16 on an inaccurate copy of the credit report.  As this error is clear
17 from Montgomery's motion for leave to file a motion for
18 reconsideration, further briefing is unnecessary.  Accordingly, the
19 Court VACATES its August 6 Order and reconsiders the other
20 arguments advanced in PNC's motion to dismiss.
21    **B.**   <u>**Motion to Dismiss**</u>
22       1.   <u>Accuracy of Montgomery's Credit Report</u>
23      PNC's lead argument in favor of dismissal is that Montgomery
24 cannot state a claim for false credit reporting because his credit
25 report is accurate.  MTD at 3.  This argument is unavailing.
26 Montgomery's credit report reflects that he was delinquent on the

---

[3] It is not clear that Montgomery is responsible for the poor quality of the credit report.  PNC filed a copy of the document with the Court when it removed this action from state court.

5

payments for his PNC loan from June 2009 through October 2010. Compl. Ex. C. Montgomery alleges that no delinquencies should have been reported on the account after June 2010, when his PNC debt was discharged through bankruptcy. Compl. ¶¶ 15-16. PNC has offered no authority which would suggest that this position is incorrect as a matter of law. Further, on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and construe them in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). Thus, at this stage of the litigation, the Court cannot conclude that Montgomery's credit was accurately reported.

### 2. Transfer of Montgomery's Loan

PNC also argues that it could not have improperly reported Montgomery's credit in 2011 because it transferred Montgomery's account to another loan servicer in December 2010. See MTD at 1, 4-6. PNC points to the credit report attached to the Complaint, which states that Montgomery's PNC account had been "transferred to another lender." Id. PNC also points to a pleading filed by Montgomery in another matter which alleges that "Litton" became the servicer of one of Montgomery's PNC loans in December 2010. Id. (citing RJN Ex. A). Montgomery responds that it is irrelevant that PNC is not currently servicing his loan since the bank continues to report inaccuracies on the account. Opp'n at 11. This dispute boils down to a question of who reported the delinquencies on Montgomery's PNC account in 2011, PNC or some other entity.[4] Such

---

[4] PNC does not dispute that it could be held liable if it was responsible for reporting false information after Montgomery's account was transferred. Rather, its position appears to be that, after the account was transferred, it did not convey any

6

factual disputes are inappropriate for resolution on a Rule 12(b)(6) motion to dismiss.  Accordingly, the Court declines to dismiss Montgomery's action or any of his individual claims on the ground that Montgomery's PNC account was transferred.

### 3. Violation of the FCRA

PNC argues that Montgomery has failed to state an actionable violation of the FCRA because "[Montgomery] has no private right of action under the FCRA for the alleged inaccurate reporting of information."  MTD at 4.  It is true that there is no private right of action under 15 U.S.C. § 1681s-2(a), which relates to the "duty of furnishers of information to provide accurate information."  15 U.S.C. § 1681s-2(d); see also Nelson v. Equifax Info. Servs., LLC, 522 F. Supp. 2d 1222, 1230 (C.D. Cal. 2007).  However, Montgomery's FCRA claim is predicated on § 1681s-2(b), not § 1681s-2(a).  Compl. ¶¶ 28-37.  The FCRA does not preclude private lawsuits brought under § 1681s-2(b).  15 U.S.C. § 1681s-2(d); see also Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1155 (9th Cir. 2009).

Section 1681s-2(b) requires that, after receiving a notice of dispute concerning the accuracy of any information provided to a consumer reporting agency, a furnisher of information shall, among other things, "conduct an investigation," "review the relevant information," and "report the results."  15 U.S.C. § 1681s-2(b)(1).  PNC argues that Montgomery's allegation that an investigation occurred indicates that there was no violation of the statute.  MTD at 4.  PNC reasons that the statute merely requires an investigation, and does not mandate that the investigation be "reasonable."  This exact argument has been addressed and rejected

---

information pertaining to Montgomery's account to the credit reporting agencies.

7

by the Ninth Circuit. Gorman, 584 F.3d at 1165 ("[W]e hold that any investigation under § 1681s-2(b)(1)(A) must be reasonable."). Accordingly, PNC's motion to dismiss is denied with respect to Montgomery's claim for violation of the FCRA.

    4. Violation of the Song-Beverly Credit Card Act

Montgomery's claim for violation of the Song-Beverly Credit Card Act does not identify which provision of the Act PNC allegedly violated. However, it appears that Montgomery intends to allege a violation of California Civil Code section 1747.70, which provides that "[n]o card issuer shall knowingly give any untrue credit information to any other person concerning a cardholder." See Compl. ¶ 39 ("Creditor published . . . credit reports which contained statements about Plaintiff that were untrue . . . ."). As PNC points out, Montgomery cannot possibly state a claim under this provision -- or any other provision of the Song-Beverly Credit Card Act for that matter -- because it applies to credit card debts, not mortgage debts like the one that is the subject of this action.[5] Montgomery does not offer any response to this argument. Accordingly, Montgomery's claim for violation of the Song-Beverly Credit Card Act is DISMISSED WITH PREJUDICE.

    5. FCRA Preemption

PNC argues that all of Montgomery's state law causes of action, with the exception of his claim for violation of California Civil Code § 1785.25a(a), are preempted by the FCRA. MTD at 5.

---

[5] Even if Montgomery means to refer to the apparent credit card debt referenced in the exhibits to his complaint, he still cannot plead a plausible violation of the Song-Beverly Credit Card Act. The credit report attached to the Complaint shows that this debt was "Discharged through Bankruptcy Chapter 7." Compl. Ex. C. The report also does not reflect any delinquencies on the account.

8

Even though this argument implicates seven of Montgomery's claims, PNC summarily outlines its position in two short paragraphs and does not mention the issue in its reply brief. Considering that PNC, as the moving party, bears the burden of persuasion, its briefing leaves much to be desired. Nevertheless, PNC's legal position has some merit.

With respect to preemption, the FCRA provides:

> (a) Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.
>
> (b) General exceptions
>
> No requirement or prohibition may be imposed under the laws of any State--
>
> (1) with respect to any subject matter regulated under--
> . . .
> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply--
> . . .
> (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996) . . . .

15 U.S.C. § 1681t. In sum, the FCRA does not preempt state law collection, distribution, and reporting requirements, except those relating to the furnishing of accurate information to credit reporting agencies. The FCRA also does not preempt California Civil Code section 1785.25(a). With this framework in mind, the Court turns to Montgomery's fourth through ninth causes of action.

9

1   Montgomery's fourth cause of action for violation of the
2   California UCL is not preempted because it is predicated on PNC's
3   alleged violation of California Civil Code section 1785.25(a).
4   See Compl. ¶ 62.  As discussed above, the FCRA expressly exempts
5   section 1785.25(a) from preemption.  Thus, Montgomery' UCL claim
6   "does impose any additional substantive duties on [PNC]" beyond
7   those set forth in the FCRA and "is merely an additional
8   procedural vehicle for enforcing section 1725.25(a)."  El-Aheidab
9   v. Citibank, N.A., C-11-5359 EMC, 2012 WL 506473, at *6 (N.D. Cal.
10  Feb. 15, 2012); see also Bottoni v. Sallie Mae, Inc., C 10-03602
11  LB, 2011 WL 635272, at *15 (N.D. Cal. Feb. 11, 2011).
12  Accordingly, Montgomery's claim for violation of the UCL
13  remains undisturbed.
14  The Court reaches a different conclusion with respect to the
15  preemption of Montgomery's remaining state law claims for libel,
16  intentional infliction of emotional distress, negligent infliction
17  of emotional distress, deceit, and constructive fraud.  There is a
18  split of authority in this area that arises from the tension
19  between two provisions of the FCRA.  When it was first enacted in
20  1968, the FCRA contained only one section dealing with the
21  preemption of state law claims.  This section, 15 U.S.C. §
22  1681h(e), currently provides:

> Except as provided in section 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action based in whole or part on the report

10

> except as to false information furnished with malice or willful intent to injure such consumer.

In sum, under § 1681h(e), state law claims for defamation and certain other torts are preempted only to the extent that such claims are based on the disclosure of certain information and are not based on "malice or willful intent to injure such consumer." Congress later amended the FCRA to add a broader preemption provision, currently codified at 15 U.S.C. § 1681t(b)(1)(F). As discussed above, this provision preempts all state law requirements relating to the furnishing of accurate information to credit reporting agencies. Congress did not repeal or alter § 1682h(e) when it enacted § 1681t(b)(1)(F).

Courts have taken three approaches to address this tension: the "total preemption" approach, the "temporal" approach, and the "statutory" approach. As one court aptly summarized:

> Under the "total preemption" approach, [1681]t(b)(1)(F) does indeed preempt all state law claims against furnishers of credit information arising from conduct regulated by 1681s-2, thus effectively repealing the earlier preemption provision, 1681h(e). Under the "temporal" approach, preemption depends on whether the cause of action arises before or after a credit information furnisher has notice of a consumer dispute. Finally, under the "statutory" approach, [1681]t(b)(1)(F) preempts only state law claims against credit information furnishers brought under state statutes, just as 1681h(e) preempts only state tort claims.

Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 424-25 (E.D. Pa. 2006) (footnotes omitted). The Ninth Circuit has yet to choose among these different approaches. See Gorman, 584 F.3d at 1167 ("In the end, we need not decide this issue."). However, the majority of district courts in this circuit appear to have adopted the total preemption approach. See, e.g., El-Aheidab, 2012 WL 506473, at *6-8 (applying the total preemption approach and

11

collecting cases), <u>Miller v. Bank of Am., Nat. Ass'n</u>, 3:11-CV-02588-MMA, 2012 WL 871321 (S.D. Cal. Mar. 14, 2012) (applying the total preemption approach); but see <u>Gorman v. Wolpoff & Abramson, LLP</u>, 370 F. Supp. 2d 1005, 1009 (N.D. Cal. 2005) (adopting the statutory approach).  Circuit courts that have addressed the issue have also adopted the total preemption approach.  See <u>Macpherson v. JPMorgan Chase Bank, N.A.</u>, 665 F.3d 45, 47-48 (2d Cir. 2011); <u>Purcell v. Bank of America</u>, 659 F.3d 622, 624–25 (7th Cir. 2011).

In light of the weight of authority favoring the total preemption approach, the Court finds that Montgomery's claims for libel, intentional infliction of emotional distress, negligent infliction of emotional distress, deceit, and constructive fraud are preempted by the FCRA.  These claims arise from conduct regulated by § 1681s-2 and, thus, are preempted by § 1681t(b)(1)(F).[6]  Accordingly, they are DISMISSED WITH PREJUDICE.

## IV. CONCLUSION

For the foregoing reasons, the Court VACATES its August 6, 2012 Order and directs the clerk of the court to reopen this case.  The Court also GRANTS in part and DENIES in part Defendant PNC Bank N.A.'s motion to dismiss.  The Court DISMISSES WITH PREJUDICE

---

[6] Even if they were not preempted, many of these claims would still fail.  Montgomery cannot state a claim for intentional infliction of emotional distress based on purely economic activity.  See <u>Potter v. Firestone & Rubber Co.</u>, 6 Cal. 4th 965, 985 (Cal. 1993).  Nor can he state a claim for fraud or deceit since he has not alleged that PNC induced any detrimental reliance by Montgomery.  The fraud and deceit claims also fail to the extent that they are predicated on an "attempt[] to collect" a non-existent debt against Montgomery, see Compl. ¶¶ 86, 90, since Montgomery has not alleged that PNC engaged in any debt collection activities after he filed for bankruptcy.  Montgomery does not attempt to save either of these claims in his opposition papers.

Plaintiff Larry Montgomery's claims for violation of the California Song-Beverly Credit Card Act, libel, intentional infliction of emotional distress, negligent infliction of emotional distress, deceit, and constructive fraud.  Montgomery's remaining claims for violation of the FCRA, violation of California Civil Code section 1785.25(a), and violation of the California UCL remain undisturbed.

The Court hereby sets a case management conference for September 21, 2012 at 10:00 a.m. in Courtroom 1, 450 Golden Gate Avenue, San Francisco, California.  The parties are to file a joint case management statement no fewer than seven days prior.

IT IS SO ORDERED.

Dated: August 24, 2012

_____
UNITED STATES DISTRICT JUDGE